UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELLY BORG, on behalf of
herself and all other
similarly situated
individuals,

        Plaintiff,

v.                            Case No. 8:16-cv-2070-T-33TGW

PHELAN, HALLINAN, DIAMOND
& JONES, PLLC,

        Defendant.
_____/

**ORDER**

      This matter comes before the Court pursuant to Plaintiff Kelly Borg's Motion for Class Certification (Doc. # 52), filed on May 1, 2017. Defendant Phelan, Hallinan, Diamond & Jones, PLLC filed its response on May 15, 2017. (Doc. # 58). Because the Court determines Borg lacks standing, the Motion is denied.

**I.   Background**

      In 2005, Borg took out a mortgage to purchase a primary residence. (Doc. # 1 at ¶ 10). U.S. Bank National Association, which is the client of the law firm Phelan, later obtained ownership of Borg's mortgage obligation. (Id. at ¶ 11). Wells Fargo Bank, N.A. services the loan. (Id.).

On February 8, 2016, after Borg allegedly defaulted on the mortgage, Phelan, on behalf of U.S. Bank, filed a foreclosure action in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, against Borg and "Unknown Tenants." (Id. at ¶¶ 12-14; Doc. # 52-1). That case is the second foreclosure action filed against Borg. (Doc. # 1 at ¶ 12). However, Borg prevailed in the first foreclosure action. (Id.). The second foreclosure action is ongoing and no judgment has been entered. (Borg Dep. Doc. # 54 at 18:10-13).

On July 19, 2016, Borg filed her class action Complaint in this Court against Phelan, alleging Phelan violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA), during its representation of U.S. Bank in the ongoing foreclosure action. (Doc. # 1 at ¶ 14). Neither U.S. Bank nor Wells Fargo are parties in this case. Rather, Borg alleges only that Phelan violated the FDCPA during the foreclosure action in four ways: (1) "attempting to collect monthly installment payments due beyond Florida's five year statute of limitations"; (2) "assess[ing] charges against borrowers for serving process on 'unknown tenants'"; (3) "falsely claim[ing] that [Phelan's] client, U.S. Bank, is the 'holder' of the note at issue and, thus, entitled to sue [Borg] . .

.";  and (4) "omitting the fact that [Borg's] home was
previously subject to a prior foreclosure lawsuit" and
"fail[ing] to [file a second 'Notice of Intent to Foreclosure'
letter] prior to instituting the second state court
foreclosure." (Id. at ¶¶ 15-18). The Complaint alleges Phelan
commits similar violations in the many other foreclosure
actions it initiates. (Id. at 4-6). Then, on August 16, 2016,
Phelan filed a motion to dismiss the Complaint, which the
Court denied. (Doc. ## 6, 27). Thereafter, Borg voluntarily
dismissed two of the four class allegations in the Complaint.
(Doc. # 43).

On May 1, 2017, Borg filed her Motion for Class
Certification. (Doc. # 52). Although there are two remaining
class allegations in the Complaint, Borg is only pursuing
class certification as to the fees charged by Phelan for
service on unknown tenants. (Id. at 1). Borg defines the
class as: "All persons in Florida during the 12 months
preceding the filing of this lawsuit in which [Phelan] filed
a foreclosure action seeking to collect on charges against
borrowers for serving process against 'unknown tenants.'"
(Id.). Borg argues it violates Florida law for Phelan to
charge her and the other class members for such unknown tenant
fees. (Doc. # 52 at 2-3). According to Borg, "service of

3

process on an unknown tenant is as a matter of law a nullity, making these charges improper and, therefore, a violation of the FDCPA." (Id. at 3).

Phelan filed its response on May 15, 2017, arguing that Borg lacks standing to bring her claim and thus cannot represent the class. (Doc. # 58). Alternatively, Phelan argues the proposed class lacks commonality and typicality, and Borg would not be an adequate representative of the class.

## II. **Legal Standard**

To certify a class action, the moving party must satisfy a number of prerequisites. First, the named plaintiff must demonstrate standing. Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). Second, the putative class must meet all four requirements enumerated in Federal Rule of Civil Procedure 23(a). Id. Those four requirements are "numerosity, commonality, typicality, and adequacy of representation." Id. (quoting Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1188 (11th Cir. 2003)). Third, the putative class must fit into at least one of the three class types defined by Rule 23(b). Id. Relevant to this case, Rule 23(b)(3) permits certification of a class where (1) common questions of law or fact predominate over questions affecting class members individually, and (2) a class action is the superior method

4

for resolving these common questions. Id. A party moving for certification of a Rule 23(b)(3) class in this Court also faces the added hurdle of proposing a cost-effective means of providing notice to putative class members. M.D. Fla. R. 4.04(b). The party moving to certify any class or subclass ultimately bears the burden of proving that all prerequisites are met. See Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233- 34 (11th Cir. 2015).

III. **Analysis**

"A plaintiff's standing to bring and maintain her lawsuit is a fundamental component of a federal court's subject matter jurisdiction." Baez v. LTD Fin. Servs., L.P., No. 6:15-cv-1043-Orl-40TBS, 2016 WL 3189133, at *2 (M.D. Fla. June 8, 2016)(citing Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1146 (2013)). The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. "'The party invoking federal jurisdiction bears the burden of

establishing' standing." Clapper, 133 S. Ct. at 1148 (quoting

Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

The injury in fact requirement is the most important

element. Spokeo, 136 S. Ct. at 1547. An injury in fact is

"'an invasion of a legally protected interest' that is

'concrete and particularized' and 'actual or imminent, not

conjectural or hypothetical.'" Id. at 1548 (quoting Lujan,

504 U.S. at 560). The injury must be "particularized," meaning

it "must affect the plaintiff in a personal and individual

way." Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 504 U.S. at

560 n.1). Additionally, the injury must be "concrete,"

meaning "it must actually exist." Spokeo, 136 S. Ct. at 1548.

The Supreme Court in Spokeo emphasized that a plaintiff cannot

"allege a bare procedural violation, divorced from any

concrete harm, and satisfy the injury-in-fact requirement of

Article III." Id. at 1549.

Borg insists the $45 service fee that will be added to

any judgment entered against her in the foreclosure case is

an injury in fact that establishes standing for her and the

putative class. (Doc. # 52 at 9-12). According to Borg,

> [She] has alleged economic harm because [she], and
> every putative class member[] she seeks to
> represent, are having at least $45 added to their
> total debt by [Phelan] for service of an "unknown
> tenant." And while that money may not actually be

paid until a judgment is entered, it nonetheless is part of a debt owed by each putative class member. That debt (or at least the increased amount) is, in turn, reported as part of what [Borg] owes to banks, lenders, etc.

(Id. at 9).

Borg cites a record for her account kept by Phelan's client that lists charges related to the prior foreclosure action in which Borg prevailed, including the unknown tenant service fee. (Doc. # 52-2). While Borg has not produced a similar record for her current foreclosure action, she notes "[Phelan's] corporate representative [Mr. Lenzi] testified that [such charges] still, are in fact, incurred and passed on to the borrowers." (Doc. # 52 at 11). Also, for the current foreclosure action, Phelan did serve "a friend of [Borg's] who happened to be at her house and opened the door" as if he were an unknown tenant. (Id. at 6-7; Doc. # 57-1).

For the sake of argument, the Court will assume the record of fees from Borg's past foreclosure is representative of how Phelan and its client are tracking the litigation costs for Borg's current foreclosure action. In that past record, which is labeled as a "Corporate Advance History Screen," the charges to Borg's account include a $170 charge for process service fees, which includes a $45 fee for service on an unknown tenant. (Doc. # 52-2; Lenzi Dep. Doc. # 53 at 32:10-

17). Other charges include $952.50 for filing fees and $910 in attorney's fees. (Doc. # 52-2).

Phelan counters that Borg has not yet incurred an injury because Borg "is not yet obligated to pay the $45" for the ongoing foreclosure action and neither Phelan nor its client ever demanded payment of the $45 fee from her. (Doc. # 58 at 4-6). Borg admitted she never received a letter from Phelan saying she owes the $45 fee for service on an unknown tenant. (Borg Dep. Doc. # 54 at 14:13-18). And Mr. Lenzi, the managing partner of Phelan, confirmed Phelan had not demanded payment of the $45 fee from Borg:

> Q: Okay. What I just want to nail down, when it's charged to her account, Ms. Borg, to this day, still has not been given any letter or judgment or order, or anything else at this point in time actually asking for that $45; isn't that correct?
>
> A: Yes.

(Lenzi Dep. Doc. # 53 at 36:17-22). Rather, in accordance with its typical practice, Phelan would have charged the service fee to its client, who then would have added the charge to a record for Borg's account. (Id. at 7:15-9:5; 30:19-31:3; 34:13-17). Such a record of litigation fees charged by Phelan's client serves as a "judgment worksheet" tracking "the figures that would be provided by [Phelan's] client to prepare the final judgment" in Borg's foreclosure

case. (Id. at 30:16-31:3; 34:13-21). But the foreclosure action is still ongoing so no judgment of foreclosure has been entered and the issue of fees and costs has not been adjudicated by the state court. (Borg Dep. Doc. # 54 at 18:10-13). There is no evidence Phelan has submitted a calculation of its litigation costs to the court in Borg's foreclosure action. Nor is there evidence Phelan has argued to that court that the specific $45 service fee is lawful and should be awarded to its client.

Still, as Borg emphasizes, Mr. Lenzi acknowledged in his deposition that the foreclosure complaint requests "an add-up of the fees and costs and interest accrued, [and] that the Court award a judgment allowing us to recover[] those fees, costs, and accrued interests," including the $45 service fee. (Lenzi Dep. Doc. # 53 at 37:22-24). To be precise, the foreclosure complaint's prayer for relief requests the court "award[] Plaintiff its attorney['s] fees, costs, interest, [and] advances." (Doc. # 52-1 at 6). Thus, the foreclosure complaint requests a ruling stating Phelan's client is entitled to a recovery of its fees and costs if judgment is entered in its favor. Borg asserts this general request for an award of all fees, which would include the allegedly unlawful $45 unknown tenant service fee, is a violation of

the FDCPA because it is an attempt to collect a debt that is not legally owed. (Doc. # 52 at 2-3).

Even if Phelan's request for reimbursement of the $45 fee in the event judgment is entered against Borg violates the FDCPA, Borg would still lack Article III standing to bring that claim. "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 136 S. Ct. at 1549. Not all statutory violations "cause harm or present any material risk of harm." Id. at 1550. The Court finds Borg has not yet incurred a concrete injury as a result of the $45 service fee Phelan hopes to recover, nor is there a sufficiently material risk of harm that Borg will be required to pay the fee. Cf. Braitberg v. Charter Commc'ns, Inc., 836 F.3d 925, 930 (8th Cir. 2016)(finding no Article III standing where the plaintiff consumer asserted the defendant cable company "violated a [statutory] duty to destroy personally identifiable information by retaining that information longer than the company should have kept it" without alleging the information was disclosed or used in any way or identifying a material risk it would be).

Borg correctly notes intangible injuries may be "concrete" for standing purposes. Spokeo, 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize,

we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete."); see also Church v. Accretive Health, Inc., 654 F. App'x 990, 995 (11th Cir. 2016)(holding the plaintiff's failure to receive disclosures to which she was entitled under the FDCPA constituted a concrete injury). Still, the injury supposedly incurred by various class members — "having at least $45 added to their total debt by [Phelan] for service of an 'unknown tenant'" — is not intangible. (Doc. # 52 at 9). Having unlawful fees added to a debt is a tangible economic injury. But Borg has not incurred that injury.

And while some threatened injuries may support standing, the risk of the $45 fee being added to Borg's foreclosure judgment is too speculative to establish standing. See Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014)("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." (quoting Clapper, 133 S. Ct. at 1147, 1150 n.5)). First, the litigation fees and costs, including the unknown tenant service fee, will only be owed by Borg if Phelan's client prevails in the foreclosure action. See Fla. Stat. § 57.041(1) ("The party recovering judgment shall recover all his or her legal costs and charges which

11

shall be included in the judgment . . .”). Mr. Lenzi clarified

that the unknown tenant fee is only paid by the borrower in

a foreclosure action if a judgment is entered against the

borrower:

> Q:   That $45 service charge for service of the
> unknown tenant is passed on to the live person named
> in the foreclosure lawsuit and added to their
> account, [] right?
>
> A:   It's possible.
>
> . . . .
>
> Q:   What do you mean "it's possible"?
>
> A:   Depending on whether or not the borrower ends
> up paying the loan, or judgment's entered, or if
> there's other loss mit[igation] options.
>
> Q:   But in every instance, the $45 is charged to
> the borrower, correct?
>
> . . . .
>
> A:   Yeah, it could be.
>
> Q:   I'm not clear on what you mean, "it could be."
>
> A:   If the file would go through to judgment, yes,
> it would be charged.

(Lenzi Dep. Doc. # 53 at 8:7-9:5).

It is uncertain whether a foreclosure judgment will be

entered against Borg for her alleged default on her mortgage.

Cf. Whitmore v. Arkansas, 495 U.S. 149, 159-60 (1990)("It is

just not possible for a litigant to prove in advance that the

judicial system will lead to any particular result in his

12

case. Thus, . . . there is no amount of evidence that potentially could establish that Whitmore's asserted future injury is real and immediate." (citation and internal quotation marks omitted)). Indeed, Borg states she prevailed in the first foreclosure proceeding brought against her. (Doc. # 1 at ¶ 12). If Borg prevails in the current foreclosure action, or reaches a settlement with Phelan's client, or goes through an alternate loss mitigation process, then Borg would not owe the $45 service fee.

Therefore, Borg's assertion "while that money may not actually be paid until a judgment is entered, [the $45 fee] nonetheless is part of a debt owed by each putative class member," is incorrect. (Doc. # 52 at 9). The $45 for service on unknown tenants is a fee Phelan charges to its own client and tracks along with other litigation costs to be recouped if judgment is subsequently entered against the borrower. Under Borg's reasoning, all other litigation costs tracked by Phelan's client — including the attorney's fees and filing fee for the foreclosure action — have already been added to Borg's debt simply because Phelan would move to recover them if its client prevails. But, without a judgment adjudicating Phelan's client as the prevailing party and taxing those costs, Borg does not owe those costs.

Next, even if a foreclosure judgment is entered against Borg, it is speculative whether the $45 fee will actually be added to the judgment. While Phelan may request the fee as part of its costs in the foreclosure action, the state court may determine the fee is unreasonable or not taxable to Borg. In this action, Borg argues it is contrary to Florida law for the unknown tenant fee to be taxed against her. (Doc. # 52 at 2-3). Borg is free to raise this argument with the state court, which would not impose the fee on Borg if it agrees the service on an unknown tenant was improper and the fee unlawful. See Seminole Cty. v. Koziara, 881 So. 2d 83, 85 n.2 (Fla. 5th DCA 2004)("If (as there almost never is) there is a genuine dispute over an identified item of taxable costs, the court should conduct a hearing to resolve the dispute."); Tacher v. Mathews, 845 So.2d 332, 334 (Fla. 3d DCA 2003)(noting section 57.041(1), Fla. Stat., mandates that the prevailing party shall recover all *lawful* court costs).

Thus, Borg will incur the $45 economic injury of which she complains only if (1) she loses the foreclosure action and (2) the state court then decides — erroneously, in Borg's eyes — that the service fee should be added to the judgment pursuant to Florida law. Such an abstract injury is not enough. See O'Shea v. Littleton, 414 U.S. 488, 494

14

(1974)("Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury.'"(citation omitted)); see also Clapper, 133 S. Ct. at 1150 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.").

As Borg does not have standing to bring a claim challenging the $45 unknown tenant service fee, she cannot serve as representative of the proposed class. Therefore, Borg's Motion for Class Certification (Doc. # 52) is denied for lack of standing.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

Plaintiff Kelly Borg's Motion for Class Certification (Doc. # 52) is **DENIED** for lack of standing.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of May, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE